ALFRED J. HAMILTON, Appellant, *v.* RICHARD HUNT, Appellee.

### APPEAL FROM MARSHALL.

Where cattle are sold, which are running at large, but with the agreement on the part of the seller, to point out the cattle to the purchaser on demand: —
*Held*, that if the seller, when requested, pointed out to the purchaser wrong cattle through mistake, as those sold, which cattle were taken and appropriated by the purchaser, the seller would be jointly liable with the taker, in trespass, to the owner ; though if the person who pointed out the cattle to the purchaser, at his request, was a stranger to the sale, and honestly pointed them out, but was mistaken, he would not be liable as trespasser.
An instruction, not applicable to the state of facts proved before a jury, is properly refused by the court.

THIS was an action of trespass to personal property, brought originally by the appellee against the appellant, before a justice

of the peace of Marshall County, and appealed by Hamilton to the circuit court of said county, LELAND, Judge, where, at the April term, 1853, the cause was again tried and judgment rendered for the plaintiff below. The defendant below appealed to this court. The facts sufficiently appear in the opinion of the court.

T. S. DICKEY, for appellant.

O. PETERS, for appellee.

CATON, J. The bill of exceptions shows so much of the evidence as is necessary to a proper understanding of the instruction which was refused by the court, and upon which the case is brought here for review. It appears that the appellant and one Cochran sold a steer to Scott, the price of which was indorsed upon a note which he held against them. The steer was at the time running upon the prairie, and they agreed to point him out whenever Scott should send for him. While he was yet running at large Scott sold the steer to Clark. Clark went after the steer and called on Hamilton to point him out. They went out a short distance, when Hamilton pointed out a red steer which he said he was sure was the one which Scott had bought, giving the ear-marks of the one sold. Clark then killed the steer, when it was found that one of the ear-marks was wanting. Hamilton then went and examined some other cattle, and soon returned, saying that he was mistaken, and that the steer Scott had bought was among the other cattle. The steer which was killed was older and larger than the one sold. The steer purchased by Scott had been running on a farm occupied by Hamilton & Cochran, and Cochran had been heard to call him his own, and talked of getting a mate for him. For the plaintiff, the court instructed the jury that if the plaintiff's steer was killed under the direction of the defendant, he was liable in this action of trespass. The defendant then asked the court to instruct the jury, " That if the jury believe from the evidence that Clark killed the steer in controversy, and that Hamilton had nothing to do with the killing directly nor indirectly, except that Clark inquired of Hamilton, ' what steer was sold to Scott,' and Hamilton, by mistake, pointed out the plaintiff's steer to Clark as the one that had been sold to Scott, that is not such a direction as is spoken of in the instructions given at the request of the plaintiff, and would not constitute a trespass by Hamilton." This instruction was refused, and the defendant excepted.

40*

It was remarked by this court in the case of Baxter *v.* The People, 3 Gil. 381, that " The object of instructions is to convey to the minds of the jury correct principles of law as applicable to the evidence which has been laid before them; and nothing should be given them unless it will promote that object." While the party in asking his instructions may assume any reasonable hypothesis which the evidence tends to prove, yet that hypothesis should be sufficiently broad to exclude others which might be found to be true from the evidence and which, if true, would render the instruction improper. Now this instruction might or might not be correct, depending upon circumstances which the jury might find to exist in the case. Were Hamilton a stranger to the transaction and bound to assume, and intending to assume no responsibility in relation to it, and was casually inquired of by Clark to point out the steer, because he was supposed to have information on the subject; and being thus inquired of had unfortunately made the mistake, it may be that that would not so connect him with the act of killing as to make him a joint trespasser with Clark. While on the other hand, if he and Cochran had jointly sold the steer to Scott, who had sold him to Clark, and under that contract of sale was bound to point out the steer when called upon for that purpose, which seems to have been the case from so much of the evidence as is contained in the bill of exceptions, then he had assumed the responsibility of a direct party to the transaction which would make him liable for the mistake which he committed. The designation of the steer, under such circumstances, would be the act of delivery, and would constitute a direction to Clark to take the steer, and would make him responsible for the taking as much as if he had done it with his own hands. Such a state of facts as is here supposed, and which the evidence that is given so strongly tends to prove, is not excluded from the minds of the jury by the instruction asked. Had the instruction been given without further explanation, the jury would have understood that these facts would not have constituted that connection either direct or indirect with the killing of the steer, which would make him liable. The instruction was asked in reference to the facts as shown by the proof, and if given would have been understood by the jury as intended by the court to apply to the state of case which had been proved. It may be insisted that the hypothesis assumed in the instruction does disconnect Hamilton entirely from the transaction, except as answering a simple inquiry which he was not bound to know that he was answering correctly, and that he designed to assume no responsibility in

Hamilton *v.* Hunt.

reference to it; yet such is not the fair import of the words when taken in connection with the facts to which the instruction was intended to be applied. It would not have been so understood by the jury to whom the court was asked to address it. The circumstances under which Clark made the inquiry of Hamilton must necessarily be taken into consideration in order to determine whether Hamilton was bound to know that he gave correct information, and the jury would unavoidably have connected the inquiry as supposed in the answer with the circumstances as proved before them, and if the counsel who drew the instruction insisted that there was proof sufficient to establish such a state of case as would exonerate him, and to rebut the proof of the previous facts which, if found true, would charge him, the instruction should have stated that it was applicable only in the event that they found the former to be true and not the latter. It may be that Clark only asked Hamilton, " What steer had been sold to Scott," and that the only connection he had with the killing was to point out the steer; and yet if he and Cochran had sold the steer to Scott, and had agreed to point him out when required, and that the inquiry had been made in pursuance of that agreement, he was bound to designate the right steer as much as if he had sold him to Clark at that moment. His connection with the killing would be as direct in the one case as in the other, and yet his liability for the mistake might be very different. In the one case he would be certainly liable, whatever may be said of the other. This instruction was wrong, because it did not exclude the hypothesis that Hamilton had been a party to the sale of the steer, and was bound to know that he pointed out the right one to the purchaser. If this was the case which they found to be proved, then the instruction would undoubtedly have misled them, and it was properly refused by the circuit court.

The judgment must be affirmed.

*Judgment affirmed.*