WILLIAM CHECKLEY, Appellant, *vs.* THE ILLINOIS CEN-
TRAL RAILROAD COMPANY, Appellee.

*Opinion filed February 20, 1913.*

1. RAILROADS—*lease of part of right of way for a warehouse does not arise from the company's relations as a common carrier.* The leasing by a railroad company of a part of its right of way for a warehouse is not a matter connected with the company's duty or liability as a common carrier, but is a matter in which the company and the lessee are the only parties interested and with which the general public has no concern.

2. SAME—*provision in company's lease that lessee will assume all risk of fire is not invalid.* A provision in a lease by a railroad company of a portion of its right of way for an elevator or warehouse, that the lessee will assume all risk of fire even though caused by the negligence of the company's servants, is not invalid as against public policy, and is not within the rule against a carrier exempting itself, in transportation contracts, from liability for negligence.

3. SAME—*provision of Criminal Code against setting fires does not prohibit railroad company from burning weeds on right of way.* The provision of the statute requiring a railroad company to keep its right of way clear of dead grass, dry weeds or other combustible material is a valid law, and the burning of such grass, weeds and combustible material is not prohibited by section 18 of the Criminal Code, providing a penalty against setting on fire any woods, prairie or other grounds.

4. SAME—*when railroad company is guilty of a technical trespass.* Where a railroad company has leased a portion of its right of way for a warehouse, without any provision for an entry by the company upon the premises, it is a technical trespass for servants of the company to go upon the premises to burn grass and weeds even though they did not know that the premises were leased; but a provision in the lease that the lessee will assume all risk of loss

by fire is a complete defense to all damages sustained by the lessee, except nominal damages.

5. APPEALS AND ERRORS—*a judgment will not be reversed to enable a party to recover nominal damages.* The Supreme Court will not reverse a judgment and award a new trial merely to allow a party to recover nominal damages.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Coles county; the Hon. W. B. SCHOLFIELD, Judge, presiding.

EMERY ANDREWS, and VAUSE & HUGHES, for appellant.

JAMES W. & EDWARD C. CRAIG, (JOHN G. DRENNAN, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

William Checkley brought an action against the Illinois Central Railroad Company in the circuit court of Coles county to recover damages for the loss of a warehouse and its contents by fire. After a somewhat lengthy and involved course of pleading in the court below the parties arrived at an issue of law upon the pivotal question upon which the rights of the parties depend. The issue was made by a demurrer to defendant's fifth additional plea, which was overruled by the court, and the plaintiff having elected to stand by his demurrer, judgment *nil capiat* was rendered against him. The Appellate Court for the Third District affirmed the judgment below, granted a certificate of importance and allowed an appeal to this court.

Appellant's declaration was in case, and alleged in various counts that he was the owner and in the possession of a certain warehouse, and a large quantity of broom corn stored therein, upon certain premises in the city of Mattoon, and that the defendant, by its servants and agents, put out fire on its right of way, which through the negli-

gence of the said servants was communicated to the warehouse of appellant, causing the destruction thereof, together with its contents. Other counts of the declaration charged a trespass on appellant's premises and the putting out of the fire thereon, which was communicated to the building, causing the damage complained of. The fifth additional plea of appellee is a plea in confession and avoidance. It avers that the close and premises of appellant referred to in the declaration were only held by appellant as a tenant of appellee by virtue of a lease, and sets out the provisions of the lease. The plea avers that in and by said lease appellant agreed to assume the risk of loss and damage by fire and to indemnify and save appellee harmless from all liability for damage by fire. It alleges that the fire complained of was set out by servants of appellee while burning the right of way and ground of appellee and freeing the same from dry grass, weeds and other combustible substances, and that said servants set out said fire believing that it was on part of the right of way of appellee and not knowing that the premises had been leased to appellant. The plea further alleges that the servants of appellee, before leaving the premises, put out said fire as they supposed, but that the fire smoldered for two days in sawdust which appellant had allowed to remain and be on said premises and then broke out and was communicated to the buildings.

The lease set out in the plea contains, among other things, the following: "The lessee further agrees to pay all taxes and assessments that may be legally assessed on said demised premises during the continuance of the tenancy hereby created; and further, that at all times during the continuance of said tenancy he will exercise such care and cause such precautions to be taken as shall adequately protect buildings and structures on said demised premises and their contents, and all property, of whatever description, situated on said premises, against all dangers to which they may be exposed from fire by reason of the proximity

of said premises to the railroad operated by the lessor and the movement or use of locomotive engines and cars upon its tracks; the risks of all loss, injury and damage by fire, however caused, and whether or not caused by the negligence of the lessor, its agents or servants, being hereby assumed by the lessee, who, in consideration of the leasing of said premises on the terms aforesaid, hereby agrees to indemnify and save harmless the lessor from all liability for damage by fire, however the fire may originate, the risk of which is assumed as aforesaid."

Clearly, the language of this lease, under any fair construction, exempts appellee from any liability to appellant for damages arising from a fire resulting from the negligence of appellee's servants or otherwise. The intent and purpose of the parties clearly were to exonerate appellee from any liability to appellant for damages that might result from fire. Assuming this to be the effect of the lease, appellant contends that the lease, in so far as it purports to exempt appellee from liability for negligence, is illegal and void, as being in contravention of the public policy of this State. The validity of these provisions of the lease is the controlling issue involved in this controversy.

The rule is well established by decisions in this State and elsewhere, that any contract by which a common carrier of goods or passengers undertakes to exempt himself from liability for loss or damage arising from the negligence of himself or his servants is void as against public policy. Such contracts, if sustained, would relieve the carrier from its essential and important duties to the public growing out of the character of its employment and tend to defeat the foundation principle on which the law of common carriers is based,—that is, the securing of the highest care and diligence in the performance of the important duties due to the public. It has accordingly been very generally accepted as a sound principle of the common law, that any general stipulation in a carrier's bill of lading or

receipt by which the consignor or consignee is made to assume the risks of conveyance, or any special risks like those of fire and the like, will always be read with an implied exception of injuries or damage resulting from the want of ordinary care on the part of the carrier or his servants. This general doctrine is supported by numerous authorities, many of which are collected and cited by Cooley on Torts, (3d ed. p. 1479.) But the lease by appellee of a portion of its right of way for a warehouse does not relate to any of the duties imposed by the law upon appellee as a common carrier. The public is in no way concerned in this transaction, nor is it a matter of public interest whether the loss of the property destroyed by fire shall fall on one party rather than on the other. The situation is entirely different between the loss of this warehouse and its contents and the loss of goods entrusted to a carrier for transportation. In the latter case the public has an interest which is conserved by holding the carrier to a strict accountability for its negligence or that of its servants, and this for the plain reason that the public is compelled to employ the carrier to transport goods. Any member of the public is liable to require the services of a common carrier, and the carrier is under the legal duty of serving the public indiscriminately. Not so in regard to leasing a part of its right of way for a warehouse or an elevator. While the railroad company has the power to make such lease if it does not interfere with its duties to the public, it is in no sense required to do so. No one could compel a railroad company, by *mandamus,* to lease its right of way for such purposes. It relates to a matter that is entirely within the discretion of the railroad company. In testing the validity of the lease under consideration, the circumstance that one party to it is a railroad corporation and engaged in the service of the public as common carrier is not of controlling importance. Indeed, it is difficult to see that it is of any importance whatever. Page, in his late work on

Contracts, in section 368, lays down the rule as follows: "The rule that a common carrier cannot, by contract, relieve himself from liability for the negligence of himself or his employees has no application to provisions in leases given by such carrier for buildings owned by him on or near the right of way, exempting him from liability for loss by fire."

The precise question now under consideration does not appear to have been heretofore presented to this court, but it has been decided in a number of other jurisdictions in accordance with the rule above stated by Page. Among the cases where leases of the same general character as the one here involved have been held valid and enforcible the following may be cited: *Hartford Fire Ins. Co.* v. *Chicago, Milwaukee and St. Paul Railway Co.* 175 U. S. 91; *King* v. *Southern Pacific Railroad Co.* 109 Cal. 96; 29 L. R. A. 755; *Stephens* v. *Southern Pacific Railroad Co.* 109 id. 86; 50 Am. St. Rep. 17; 29 L. R. A. 751; *Griswold* v. *Illinois Central Railroad Co.* 90 Iowa, 265; 24 L. R. A. 647; 57 N. W. Rep. 843; *Greenwich Ins. Co.* v. *Louisville and Nashville Railroad Co.* (Ky.) 56 L. R. A. 477; *Wabash Railway Co.* v. *Ordelheide,* 172 Mo. 436; *Rutherford* v. *Wabash Railroad Co.* 147 Mo. 441; *Northern Pacific Railway Co.* v. *McClure,* 9 N. Dak. 73; 47 L. R. A. 149; 81 N. W. Rep. 52. The cases above cited all involved, either directly or indirectly, the validity of contracts, most of them leases like the one involved here, which purported to exempt the railroad company from liability for fires happening through the negligence of its servants. There is no well considered case that has come to our notice to the contrary. Some expressions may be found to the general effect that any contract by any person which assumes to place another party at the mercy of his own faulty conduct is void as against public policy, but such a statement of the rule of the law is too general and sweeping to receive judicial sanction. A fire insurance policy issued to anyone

which purported to insure his property against his own willful and intentional burning of the same would manifestly be condemned by all courts as contrary to a sound public policy, but it is not unlawful for insurance companies to issue policies which will protect property against a loss caused by the negligence of the assured. That is probably the most fruitful cause of fire losses. A common carrier owning property may obtain insurance against loss by fire resulting from the negligence of himself or his servants, and a stipulation may lawfully be entered into between the carrier and the owner of the goods by which the carrier is to have the benefit of such insurance procured thereon by the owner. If the owner of goods about to be transported insures them against loss by fire in transit, the carrier may make a lawful contract with the shipper that after having paid the owner for the loss under its general common law liability it may maintain an action against the insurance company and collect the insurance by way of indemnity for the loss sustained. (*Phœnix Ins. Co.* v. *Erie Transportation Co.* 117 U. S. 312; *Wager* v. *Providence Ins. Co.* 150 id. 99; *Hartford Ins. Co.* v. *Chicago, Milwaukee and St. Paul Railway Co. supra.*) If appellee had owned the warehouse and its contents in question it could have lawfully insured the same for its own benefit, and such insurance contract might have protected appellee from loss or damage caused by fire originating through the negligence of its servants. If such a contract, which is one of indemnity, merely, is valid, why may not appellee lawfully protect itself from damage arising from the same source by a stipulation with its tenant? There appears to be no distinction, either upon reason or authority, for upholding the contract in one case and declaring it void in the other.

Appellant makes the point that certain counts of his declaration are based on a violation of section 18 of the Criminal Code, which provides a penalty against any person who shall "willfully and intentionally or negligently and

carelessly set on fire, or cause to be set on fire any woods, prairies or other grounds whatsoever." Paragraph 63 of chapter 114 (which is section 1½ of the Railroad act of 1874) makes it the duty of all railroad corporations to keep their rights of way clear from all dead grass, dry weeds or other dangerous combustible material, and provides certain liabilities and penalties for a neglect to comply with this statute. This statute is a valid constitutional law and binding upon all railroads in this State. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Hamilton,* 200 Ill. 633.) Manifestly, this statute was designed to prevent the starting and spreading of fires and as a protection to the public, and is a proper police regulation, which may be enforced by appropriate penalties. It is clear that the section of the Criminal Code prohibiting the setting on fire any "woods, prairies or other grounds" cannot be construed to prohibit a railroad company from the use of the only reasonable means to comply with paragraph 63 of the Railroad act. The section of the Criminal Code relied on was first enacted in this State in 1819, and with slight changes has been continued from that time until the present as a part of our Criminal Code. When this statute was first enacted conditions in Illinois were entirely different from what they are now. There were no railroads. The greater portion of the State was grown up with prairie grass, and the balance was timber lands, covered with leaves and fallen branches. There were no means of controlling or extinguishing a fire once started, owing to the sparsely settled condition of the country. The words in the statute, "woods, prairies or other grounds," construed with reference to the conditions that existed when the statute was first enacted, would exclude one's own premises where a fire was required for the purpose of burning logs, brush or other combustibles necessary to clear the land. It would be a strained construction to say that a farmer could not start a fire on his own premises for the purpose of clearing his land of waste

and combustibles, and still if appellant's construction be allowed we see no escape from holding that a farmer would be subject to the penalty if he started a fire for any other purpose than that mentioned in the proviso, which does not include fires started for the purpose of clearing one's land of dry combustible material. The Criminal Code is not violated by a railroad company which in good faith and for the purpose of complying with its duty under the Railroad act sets out fire on its right of way to clear it of combustibles. Neither does the ordinance of the city of Mattoon apply to the situation existing here.

Appellant earnestly contends that whatever view may be taken in respect to the validity of the lease as an answer to his counts in case, in no event can said lease be relied on as a justification or a license in answer to his counts in trespass. Regarding the relation of the parties as that of landlord and tenant, there is no express authority reserved under the lease authorizing the landlord to enter upon the premises of his lessee, and it may be assumed that the counts in the declaration which allege that the defendant entered upon the demised premises without right and there kindled a fire, etc., show a technical breach of appellant's right to the exclusive possession of the demised premises. The law undoubtedly is that any unauthorized entry on the land or premises of another is a trespass,—and this is true even though no force be exerted; (*Kimball* v. *Custer*, 73 Ill. 389;) and ignorance or mistake of the trespasser will not exempt him from liability for actual damages. (*Hamilton* v. *Hunt*, 14 Ill. 472; *Mead* v. *Thompson*, 78 id. 62.) If it be granted that the lease cannot be used as a shield to protect appellee from the unauthorized entry upon the demised premises, still such entry would only authorize the recovery of nominal damages, since the lease, as we have seen, is a complete defense to all of the actual damages that were sustained by appellant. While we are inclined to agree with appellant that the unauthorized entry of appel-

lee's servants upon the demised premises was a technical trespass entitling appellant to nominal damages, still this court will never reverse a judgment and award a new trial merely for the purpose of enabling a party to recover nominal damages. The maxim *de minimis non curat lex* will apply and the judgment will be affirmed. *Comstock* v. *Brosseau,* 65 Ill. 39; *Chicago, Wilmington and Vermilion Coal Co.* v. *City of Streator,* 172 id. 435.

The judgment of the Appellate Court for the Third District is affirmed.          *Judgment affirmed.*