Bartee Tie Company, Appellant, v. William J. Jackson, Receiver of Chicago & Eastern Illinois Railroad Company, Appellee.

1. RAILROADS, § 907a*—*when stipulation in lease of railroad land as to nonliability for loss by fire is valid.* In an action against a railroad company to recover for loss of property by fire, where it appeared that defendant leased to plaintiff part of land owned by it near its right of way, for the purpose of storing railroad ties owned by plaintiff, until such time as plaintiff should desire to have them hauled, and the lease contained a stipulation releasing the lessor from all liability, either in law or equity, from any cause of action that might arise by reason of damage by fire to the property of the lessee caused by the operation of the railroad of the defendant, and the property in question was destroyed by a fire caused by an engine setting fire to weeds, which fire spread to the said property, *held* that the said stipulation was valid, and broad enough to exempt the defendant from all liability, and that the general demurrer to two counts of the declaration was properly sustained.

2. RAILROADS, § 907a*—*when doctrine that common carrier cannot by contract relieve itself from liability for negligence is inapplicable.* The rule that a common carrier cannot by contract relieve himself from liability for negligence, *held* to have no application to the provisions of a particular lease of land between a railroad company and its lessee, releasing the lessor from all liability for damages to the property of the lessee stored on such land, as the result of fire caused by the operation of the railroad of the lessor.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. WAREHOUSEMEN, § 2*—*when railroad company is not engaged in business of warehouseman.* In an action against a railroad company to recover for loss of property by fire, where it appeared that the defendant leased to plaintiff part of land owned by it near its right of way, for the purpose of storing railroad ties owned by plaintiff, until such time as plaintiff should desire to have them hauled, and the lease contained a stipulation releasing the lessor from all liability, either in law or equity, from any cause of action that might arise by reason of damage by fire to the property of the lessee caused by the operation of the railroad of the defendant, and the property in question was destroyed by a fire caused by an engine setting fire to weeds, which fire spread to the said property; and plaintiff claimed that defendant was engaged in the business of railroad warehouseman, and that the storing of said ties was a public utility, *held* that as the evidence failed to show that the defendant undertook to store the ties, either for hire or otherwise, and as plaintiff took possession of the land and had exclusive control thereof, the facts would not warrant a holding that the defendant was engaged in the public utility business of a warehouseman.

4. RAILROADS, § 907a*—*when stipulation in lease construed as release from all liability for destruction by fire of property stored on railroad land.* In an action against a railroad to recover for loss by fire, where the destroyed property consisted of railroad ties belonging to plaintiff and stored upon land leased by the defendant to plaintiff, and the lease contained a stipulation exempting the lessor "from all liability, either in law or equity, for or on account of any cause of action that might arise by reason of any damage by fire to the property of the lessee caused by the operation of said railroad of said lessors," and plaintiff contended that because the word "negligence" was not used, only causes of action not caused by the negligence of the defendant was meant, *held* that the language was broad enough to release the defendant from all liability of every kind.

5. APPEAL AND ERROR, § 1455*—*when error in sustaining demurrer to count in declaration is not prejudicial.* Error in sustaining a demurrer to a count of a declaration *held* not prejudicial, where the result would not have been changed even though plaintiff had been permitted to show every material fact alleged in such count.

6. APPEAL AND ERROR, § 1422*—*when errors are not prejudicial.* Courts of review reverse only for such error as may have been prejudicial to the complaining party, and no error or number of errors can with propriety be said to prejudice a party when it is

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

clear that the judgment upon the conceded facts is the only one that could properly be rendered, and that another trial would necessarily result the same way.

Appeal from the Circuit Court of Massac county; the Hon. Benjamin W. Pope, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed June 18, 1917.

Courtney, Helm & Helm, for appellant; J. D. Mocquot, of counsel.

C. L. V. Mulkey and W. R. Hunter, for appellee; Homer T. Dick, of counsel.

Mr. Presiding Justice McBride delivered the opinion of the court.

It appears from the record in this case that the appellee was a railroad company and has for many years last past been engaged in operating, in connection with its main line of railroad, a spur track to its station at Joppa Junction in Pulaski county, Illinois, and was engaged in the business of hauling lumber, ties and other freight incident to the business of a railroad company. That for the purpose of facilitating its business and for accommodating its customers it purchased a tract of land consisting of about three hundred acres at and near Joppa Junction, a part of which it leased to several of its customers in separate tracts to be used by such customers respectively in storing their ties, lumber, etc., thereon and holding such material until the markets were suitable for disposing of the same, at which time the ties and lumber would be loaded upon appellee's cars and hauled to the places desired by such customers respectively. There were times when several months would intervene between the time when the ties were stored upon the yard and the time of shipment to market. The appellee maintained a spur extending from Joppa on the Ohio River to Joppa Junction in Pulaski county, covering a distance of about

eighteen miles, and at Joppa it had incline tracks extending down to the river where cars were transported to receive lumber, ties, etc., from off of the barges that were brought to the landing. It also appears from the evidence that the appellant was engaged in the business of buying and selling ties, many of its ties were purchased from along the Cumberland and Tennessee Rivers and brought down the Ohio River in barges where they were towed by means of a boat down to appellee's landing at Joppa and were there unloaded from the barges onto appellee's cars and hauled by appellee up into the yards where the ties were unloaded and stored upon the lease of appellant. There was no compensation paid for the towing of the barges down to the landing or the hauling of the ties from the landing up to the tract of land leased by appellant where the ties would be stored. The ties were unloaded from the barges onto appellee's cars and from appellee's cars onto the lease, by the servants of appellant. The tract of land leased by appellant from appellee and upon which the ties were stored consisted of about four acres of land which lay adjoining appellee's road. Spur tracks were also built by appellee extending out into the lease occupied by appellant. There were a large number of other patrons of appellee who had leased tracts of land similar in size to the one leased by appellant and were used by these parties respectively for the storing of ties, lumber, etc. It further appears that there was some dry weeds and grass along appellee's right of way and that on April 6, 1915, this dry grass and weeds were set on fire by a spark from one of appellee's engines and the fire spread onto the leases occupied by appellant and destroyed, as claimed, about 50,000 ties of the value of about $25,000. The only charges made by appellant and the only profits accruing to it was the regular freight rate when the ties were finally loaded upon

appellee's cars from the leased tract and shipped to market. It further appears that all of the ties consumed by this fire had been stored by appellant upon its lease prior to December 31, 1914. May 1, 1914, a lease was entered into by which the appellee leased to appellant the tract of land in question from May 1, 1914 until May 5, 1915, for which appellant agreed to pay an annual rental of $20, and it was stipulated in said lease that the premises were to be occupied exclusively as a location for the storage of crossties. And it was further provided in said lease as follows: "In consideration of the privilege hereby given the lessee to occupy and use a portion of the ground of the railroad company, as above described, and the benefits and privileges to be derived therefrom, and of the rental as above named, the lessee hereby releases the lessors, their successors and assigns from all liability for damage by reason of want or failure at any time of title on the part of the lessors, to any part of said leased premises, and also release the lessors, their successors and assigns from all liability, either in law or equity, for or on account of any cause of action that might arise by reason of any damage by fire to the property of the lessee caused by the operation of said railroad of said lessors, on, near or by the premises aforesaid, whether said damage should occur on the premises hereby leased or on the premises adjacent thereto, etc."

There were three counts in plaintiff's declaration. The first and third counts stated the facts substantially as above set forth, except as to the lease. The second count, to which a demurrer was filed and sustained, differed somewhat from the other counts which will be hereinafter noticed more particularly. To the first and third counts the defendant filed the general issue and a special plea setting up the lease above described and a release of all damages caused

by fire to the property of the lessee by the operation of the railroad of lessor. At the close of all of the evidence the court directed a verdict for the appellee.

The appellant has assigned many errors upon the record, but at the close of its statement says: "The questions for determination are: 1st. Did the court err in sustaining a general demurrer to the second count? 2nd. Did the court err in directing the jury to find for defendant on the trial under the first and third counts? We believe that a decision of these questions determines the whole of the matters in dispute in this case. In arriving at a conclusion we will first consider the question as to whether or not the court erred in directing a verdict. It appears from this record that under the circumstances and conditions above set forth, one of appellee's engines while engaged in operating its road set fire to some dry weeds upon its right of way, which was communicated to appellant's lease and destroyed its ties to the extent above described. This is not disputed by the appellee but it insists that by reason of the release contained in the lease releasing appellee from all liability, either in law or equity, for or on account of any cause of action that may arise by "reason of any damage by fire to the lessee caused by operation of the railroad of lessors, on, near or by the premises aforesaid, whether said damage occurs on the premises hereby released or on premises adjacent thereto," relieves the appellee from the payment of any damages occasioned by such fire. This action is brought by the appellant to recover damages occasioned by the operation of appellee's railroad, and it seems to us that unless such contract is void that the appellant is bound thereby and barred from sustaining the right of action against appellee on account of damages resulting from such fire. In a case similar to this one in which Checkley had built a warehouse upon the right of way of the Illinois Central Railroad

Company, upon a lease which provided that the risk of all loss and damage by fire, however caused, was assumed by the lessee that such a provision in the lease barred the lessee from any right of action against the railroad company on account of fire that was set out by the burning of dry grass and weeds upon its right of way, and the Supreme Court in passing upon that question says: "Clearly, the language of this lease, under any fair construction, exempts appellee from any liability to appellant for damages arising from a fire resulting from the negligence of appellee's servants or otherwise. The intent and purpose of the parties clearly were to exonerate appellee from any liability to appellant for damages that might result from fire." *Checkley v. Illinois Cent. R. Co.,* 257 Ill. 491. We are of the opinion that the language of the lease in question is broad enough to exempt appellee from all liability and that the case of *Checkley v. Illinois Cent. R. Co., supra,* is conclusive as to appellant's rights herein.

It is contended by appellant that this clause pertains to the operation of appellee's railroad and interferes with its duties as such railroad and for that reason the clause is void. As we view it, the ties at the time of the fire were not in process of transportation, and were not under the control of appellee but were under the control of appellant and upon its lease, and is wholly different from a case where goods are lost or destroyed when under the care and control of the railroad, and it seems to us that the railroad had the right to stipulate against any loss that might be occasioned before the goods were placed under its control and while they were under the control of appellant. In the *Checkley* case, above referred to, the Supreme Court further says: "That the lease by appellee of a portion of its right of way for a warehouse does not relate to any of the duties imposed by the law upon appellee as

a common carrier. The public is in no way concerned in this transaction, nor is it a matter of public interest whether the loss of the property destroyed by fire shall fall on one party rather than on the other. The situation is entirely different between the loss of this warehouse and its contents and the loss of goods intrusted to a carrier for transportation. In the latter case the public has an interest which is conserved by holding the carrier to a strict accountability for its negligence or that of its servants, and this for the plain reason that the public is compelled to employ the carrier to transport goods. Any member of the public is liable to require the services of a common carrier, and the carrier is under the legal duty of serving the public indiscriminately. Not so in regard to leasing a part of its right of way for a warehouse or an elevator. While the railroad company has the power to make such lease if it does not interfere with its duties to the public, it is in no sense required to do so. No one could compel a railroad company, by mandamus, to lease its right of way for such purposes. It relates to a matter that is entirely within the discretion of the railroad company. In testing the validity of the lease under consideration, the circumstance that one party to it is a railroad corporation and engaged in the service of the public as common carrier is not of controlling importance. Indeed, it is difficult to see that it is of any importance whatever. Page, in his late work on Contracts, in section 368, lays down the rule as follows: 'The rule that a common carrier cannot, by contract, relieve himself from liability for the negligence of himself or his employees has no application to provisions in leases given by such carrier for buildings owned by him on or near the right of way, exempting him from liability for loss by fire.' " It is clear from the facts here disclosed that the appellee was under no obligations to lease this tract of land to the

appellant, and in doing so it was simply for the convenience of the appellant, and appellee doubtless had in mind that if the ties were stored upon its lease it would eventually obtain the haulage of them to market. There was no public duty resting upon appellee to store and care for these ties. From December 31, 1914 to April 6, 1915, they were under the control of appellant upon property under its absolute control, and no one had a right to enter thereon for the purpose of storing other ties, and we are not able to see that the making of this lease in any manner interfered with the duties that appellee owed to the public.

It is further insisted by counsel for appellant that the appellee was engaged in the business of railroad warehousemen and that the storing of those ties by the railroad, as it is assumed it did, was a public utility. There is no evidence in this record that we can find that the appellee undertook to store the ties, either for hire or otherwise. The appellant took possession of the tract of land and had the right to store its ties and to prohibit any one else from storing ties or any other article upon the premises leased by it, and appellee had no right to authorize or permit any one else to store ties or other articles upon this particular tract of land. It is insisted that the case of *State Public Utilities Commission v. Monarch Refrigerating Co.*, 267 Ill. 528, is decisive of this question. We have examined that case carefully but do not believe it is of the importance attached to it by counsel, as the premises there were under control of the Monarch Company and they were receiving and storing goods for the public indiscriminately, except that they had special apartments in which particular goods were stored, and in the manner directed by the company, and that it was strictly engaged in serving the public in that particular line. "While it is not essential to a public use that its benefits should be received by the whole public

or even a large part of it. They must not be confined, however, to specified or privileged persons.'' *People v. Ricketts,* 248 Ill. 428. ''A public use requires that all persons must have an equal right to the use and that it must be in common upon the same terms, however few the number who avail themselves of it, that it shall be open to all people to the extent that its capacity may admit of such use.'' *State Public Utilities Commission v. Monarch Refrigerating Co.,* 267 Ill. 528. ''The use must concern the public as distinguished from the individual or any particular number of individuals. * * * It may be confined to a particular district and still be public.'' *State Public Utilities Commission v. Noble Telephone Co.,* 268 Ill. 411.

We do not believe that the facts in this case will warrant us in holding that the appellee was engaged in the public utility of a warehouseman. The whole tenor of the lease in question contradicts the idea that any one but appellant was to be served by the storage of ties upon this particular tract of land.

It is also said by counsel that as the word ''negligence'' was not used in exempting appellee from liability it will be intended that the parties understood this clause to mean, any cause of action at law or equity not caused by the negligence of appellee himself. The language of this provision of the lease is broad and includes all liability of every kind, and if that provision in the lease is not void, then in order to give effect to the terms of the lease it would include all liability whether flowing from negligence, accident or otherwise.

It is insisted by counsel that the court erred in sustaining the general demurrer to the second count of appellant's declaration. This count of the declaration sets up such a state of facts as would warrant the court in holding that the appellee was engaged in the business of storing ties and lumber and that it was a pub-

lic utility; also that it held out to its patrons that it kept and maintained in close proximity a locomotive engine equipped with appliances for the extinguishment of fires so that if a fire originated upon the right of way or within the storage grounds that it could be readily extinguished; and then avers that a spark of fire from the engine ignited the weeds and spread onto appellant's premises and caused the destruction of appellant's ties. In this count of the declaration there is nothing said, however, about the contract, and we are inclined to agree with the contention of counsel that the court erred in sustaining the demurrer to the second count of the declaration, but the serious question that arises is, Did the sustaining of this demurrer operate as an injustice to the appellant or prevent the appellant from showing such facts as would entitle it to recover under all of the evidence in the case? As we view the law and the facts of this case, even if the appellee held out to the public that it kept an engine equipped for the extinguishment of fire, and that the engine was not present on that day, this would not entitle it to recover because of the contract that it had entered into and was in evidence in the case. The circumstance of appellee being engaged in the business of a public utility was submitted under the other counts of the declaration, and we are unable to see that the error committed can be said to be prejudicial to the rights of appellant in this case. Even if appellant had been permitted to show every material matter set forth in the second count of the declaration, it could not have changed the result under the evidence in this case. It is a conceded fact that the lease was entered into as claimed by appellee, and contained the provisions as set forth, and our Supreme Court has said: "Courts of review reverse only for such errors as may have been prejudicial to the complaining party, and certainly no error or number of errors can with any propriety

be said to prejudice a party when it is clear, as it is here, that the judgment upon the conceded facts is the only one that could properly be rendered, and that another trial would therefore necessarily result in the same way." *Heckle v. Grewe,* 125 Ill. 58. To authorize a reversal it must appear from the report not only that error intervened but that such error was prejudicial or probably prejudicial to the parties seeking reversal. *Bettis v. Green,* 171 Ill. 495.

We do not believe that the error complained of is prejudicial to the rights of appellant, or that any other conclusion could have been arrived at than the one pronounced by the Circuit Court upon the admission of the lease in evidence. We are of the opinion that there is no reversible error contained in this record, and the judgment of the lower court is affirmed.

*Judgment affirmed.*