(No. 23718.—

THE SYCAMORE PRESERVE WORKS, Appellant, *vs.* THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY, Appellee.

*Opinion filed February 12, 1937—Rehearing denied April 7, 1937.*

Farthing, J., dissenting.

Zane, Morse, Zimmerman & Norman, Sims & Stransky, and Latham Castle, (Edward A. Zimmerman, William R. Engelhardt, Franklin J. Stransky, and Henry Glenn Ross, of counsel,) for appellant.

Lowell B. Smith, Nelson J. Wilcox, and Nelson Trottman, for appellee.

Mr. Justice Stone delivered the opinion of the court:

This cause is here on certificate of importance from the Appellate Court for the Second District to review a judgment of that court reversing, without remanding, a judgment of the circuit court of DeKalb county. Fire,

originating on or near the right-of-way of appellee, destroyed appellant's warehouse, canning machinery, and a large amount of canned corn. Appellant brought this suit to recover. On a verdict by a jury judgment was entered against appellee for $72,926.

The declaration consists of five counts. The first four charge negligence arising out of the violation of a statute commonly known as the "Fencing act," requiring appellee to keep its right-of-way clear of dead grass, dry weeds and other dangerous combustible material. The fifth count, in addition to such charge of failure to comply with the statute, charges that the fire was negligently started by appellee's servants who were refilling and lighting a switch lamp at or about the point of the origin of the fire. Appellee's motion for a directed verdict was refused, as was its motion to dismiss the first four counts of the complaint on the ground that they did not state a cause of action. The Appellate Court held that the first four counts did not state a cause of action for the reason that they did not charge appellee with starting the fire. It also held that the fifth count could not be sustained because the evidence did not support the charge that the fire was started by servants of appellee.

The primary question submitted on the certificate of the Appellate Court is whether liability for damages may be predicated alone on a violation of the statute requiring that the right-of-way of railroad companies be kept clear of all dead grass, weeds and other dangerous combustible material. There are in the case, however, the questions whether the proof was sufficient to support the charge of the fifth count, and certain cross-errors assigned by the appellee concerning rulings of the court on the trial of the case.

The physical facts are not in dispute. Appellant's cannery and warehouse were situated adjacent to appellee's right-of-way on the east side thereof at Sycamore, Illinois.

About 250 feet south of appellant's warehouse a switch-stand connected a switch-track, known as the Borden switch, with the main track. This switch-stand was surmounted by the usual switch lamp. The fire originated at or near this switch-stand and owing to a high wind from the south spread north and east along the right-of-way and the land adjacent thereto, setting fire to appellant's warehouse. The evidence also is that two of appellee's section men, on that day and shortly before the starting of the fire, had taken the lamp from the stand, cleaned, refilled, lighted and re-placed it, and the charge of the fifth count of the com-plaint is that in so doing they negligently set fire to the dead grass and weeds on the right-of-way of the appellee. The Appellate Court found that the fire started on the right-of-way of the appellee. While the evidence is con-flicting as to the exact time at which appellee's employees refilled and relighted the switch lamp, the Appellate Court found it was but a short time before the fire was discov-ered. The evidence also is that the fire was discovered by the same section men, who attempted to put it out but were unable to do so.

We will consider first the sufficiency of the first four counts of the complaint. Appellant argues that violation of sections 1 and 1½ of the Railroad Warehouse act, (State Bar Stat. 1935, chap. 114, pars. 78 and 79,) by allowing weeds and other combustible materials to accumulate along its right-of-way, rendered appellee liable in damages for the destruction of appellant's property regardless of where, or by whom, the fire originated. They say that the statute was intended to prevent the spread of fire by requiring that the right-of-way of a railroad be kept free from combusti-ble materials, and that it being admitted in this case that dry weeds and dead grass had accumulated along the right-of-way, appellee's liability is established. Section 1 re-quires that railroads maintain fences to prevent domestic animals from getting onto the right-of-way except at cross-

ings where cattle-guards are required, and that "when such fences or cattle-guards are not kept in good repair, such railroad corporations shall be liable for all damages which may be done by the agents, engines or cars of such corporation, to such cattle, horses, sheep, hogs or other stock thereon, and reasonable attorney's fees, in any court wherein suit is brought for such damages, or to which the same may be appealed," etc. Section 1½ of the act is as follows: "It shall be the duty of all railroad corporations to keep their right-of-way clear from all dead grass, dry weeds, or other dangerous combustible material, and for neglect shall be liable to the penalties named in section 1." The question then is whether sections 1 and 1½ fix liability for damages in a case of this character where those sections have been violated, regardless of how, or by whom, the fire originated. Appellant says that they do. Appellee, on the other hand, says that section 1½ is to be read with section 1 which declares the railroad corporation which has failed to properly fence its right-of-way, liable for damages "which may be done by the agents, engines or cars of such corporation," including attorney's fees, and that the language, "shall be liable to the penalties named in section 1," relates both to the damages done by the agents, engines or cars—in short, the operation of the road—and attorney's fees. Appellant, on the other hand, argues that "penalties" relates only to attorney's fees and that damages for the acts done in the operation of the road are not to be considered penalties. Considerable argument is indulged in in the briefs on the question whether damages may be considered a penalty.

The purpose in construing a statute is to determine the intention of the General Assembly. It may be argued with force that the legislature intended by the term "penalties" to include more than attorney's fees, which is but one penalty. Correct construction of legislative language may not always be reached by a too dogmatic adherence to lexicographical definitions but statutory construction is to be de-

termined by also considering the objective of the legislation and the evils to be cured. No case has been cited to this court, and we know of none, in which this court has interpreted section 1½ of this statute. Appellant argues that the purpose of the statute has been stated by this court to be to prevent the spread of fire from the right-of-way to other property. In support of this view counsel cite *Checkley* v. *Illinois Central Railroad Co.* 257 Ill. 491, *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Hamilton,* 200 id. 633, *Chicago and Alton Railroad Co.* v. *Glenny,* 175 id. 238, *Chicago and Eastern Illinois Railroad Co.* v. *Goyette,* 133 id. 21, and *Peoria, Decatur and Evansville Railway Co.* v. *Duggan,* 109 id. 537. These are cases in which the fire was started through the operation of the road. Appellee, on the other hand, says that the purpose of the statute is to require the payment of damages where dangerous combustible materials have been allowed to accumulate on the right-of-way and a fire has been started "by the agents, engines or cars" of the railroad as provided in section 1. In other words, that to render appellee liable under the statute it is necessary that it appear from the evidence that the fire arose through some act in the operation of the railroad, and that in no case in this State, cited by appellant, has it been held that a fire, though started on the right-of-way, if started by some other agency, will result in liability to that railroad even though section 1½ of the statute has been violated. Appellant's counsel do not argue that in the absence of section 1½ appellee would be liable for damages occasioned by fire which was not started through the negligence of its employees or agencies. Clearly, in the absence of the statute the rules of common law negligence would not permit a recovery on the first four counts of this complaint as they do not amount to charging negligence of appellee as the proximate cause of the injury. It is a rule, long established and often announced, that liability for negligence must be based upon

such relationship between the act and the injury that the act may be said to be the proximate cause of the injury. It is also the rule that the intervention of independent concurring or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. *Wintersteen* v. *National Cooperage Co.* 361 Ill. 95; *Illinois Central Railroad Co.* v. *Oswald,* 338 id. 270; *Illinois Southern Railway Co.* v. *Hamill,* 226 id. 88; *Terre Haute and Indianapolis Railway Co.* v. *Williams,* 172 id. 379.

Unless, therefore, this statute is to be construed as fixing liability upon appellee in this case, without regard 'to its participation in the starting of the fire, or unless the starting of the fire by an outside agency was a result of appellee's violation of the statute, which result was probable or foreseeable, the facts charged do not meet the requirements of the rule relating to proximate cause. It is not sufficient that appellee be able to foresee that if a fire were started by someone else danger would result because of the condition of the right-of-way, but the thing foreseeable or probable, which the rule of proximate cause contemplates, is that such independent forces will probably, or are likely to, concur or intervene. (*Seith* v. *Commonwealth Electric Co.* 241 Ill. 252; *Chicago Hair & Bristle Co.* v. *Mueller,* 203 id. 558; *Braun* v. *Craven,* 175 id. 401.) It can scarcely be maintained that there is in dry grass and weeds themselves that which is likely to originate fire or to cause a third person to set it. This case differs in this from the case of *Maskaliunas* v. *Chicago and Western Indiana Railroad Co.* 318 Ill. 142, where the negligence of the railroad in failing to fence its right-of-way was held to be the proximate cause of an injury to a child, on the ground that its right-of-way was attractive to children as a thoroughfare, as the railroad should have known, and from *Village of Carterville* v. *Cook,* 129 Ill. 152, where a boy was pushed off an unprotected elevated walk by a com-

panion and the village was held liable for its failure to put up a guard rail, a plain case where the village ought to have anticipated the consequences of its negligence.

Appellee admits that permitting weeds and dangerous combustible materials to accumulate on the right-of-way is negligence, but it is stoutly denied that such negligence is the proximate cause of the injury.

Liability here, if it is to arise on these four counts, must therefore rest solely on the violation of section 1½ referred to. Cases where fire has been started by a spark from a locomotive, or where a passenger has thrown a cigarette butt out of the window, or from like causes, are not analogous to the situation arising on the charges of the first four counts of this complaint. In all such cases the act of setting the fire arose through the operation of the railroad. Such cases are of little assistance in determining liability here.

A case similar on its facts is *Stone* v. *Boston and Albany Railroad Co:* 171 Mass. 536, 51 N. E. 1. From the opinion in that case it appears that a statute of the State of Massachusetts required that oil, composed of petroleum products, be not allowed to remain or accumlate on the platforms or premises of a railroad structure within a municipality for a longer period of time than forty-eight hours without special permit from the selectmen. This statute was violated by the defendant railway company in permitting one of its platforms, which extended along the railroad tracks adjacent to its depot, to be used for the storage of oil, and the oil was permitted to remain there until carried away by the consignees. As a result of this practice the platform had become saturated with oil, which had leaked from the barrels, and which likewise dripped through the cracks to the ground beneath where rubbish accumulated from time to time. The fire originated from the act of a teamster in lighting his pipe and throwing down the burning match. The plaintiff in the case sought to recover on the ground

of the violation of the statute, notwithstanding the fire was started by a third person not an employee of the defendant. The Supreme Judicial Court of Massachusetts, though recognizing that the defendant was negligent in violating the statute, and that, had the statute been complied with, the fire which originated and caught the premises of the plaintiff across the street, to his great damage, would probably not have followed, deemed the controlling question to be whether such fire, in the absence of evidence of the act of the teamster in starting it, was an event, which, by reason of the accumulation of oil was foreseeable or probable. It was there held that it was not and that the act of the teamster, and not the negligence of the defendant railroad company, was the proximate cause of the damage, and that the negligence of the two was not concurrent. The defendant was held not liable, although the statutory duty was there declared to be absolute and the purpose of the statute was to guard against the danger from fire arising from the accumulation of highly inflammable materials. A violation of the statute was the maintenance of a nuisance declared to be a misdemeanor.

Cases, such as *Curoe* v. *Spokane and Inland Empire Railroad Co.* 32 Idaho 643, 186 Pac. 1101, where a statute declared that a railroad company which shall permit fire to spread from its right-of-way is guilty of a misdemeanor, and which declare it liable for any damages resulting from a fire spreading from its right-of-way, regardless of how or by whom started, are of but little assistance in determining this question. Appellant concedes that, in the absence of this statute, appellee's argument would be sound, but it is said the statute fixes the liability. The language of the statute is, "and for neglect shall be liable to the penalties named in section 1." It seems to us that the legislature had in mind all of the results contemplated in section 1, and that where the fire originated by the agents, engines, or cars, or through the operation of the railroad, it shall

be liable for damages caused thereby and for attorney's fees. We are of the opinion that the provisions of section 1½ relate to the dangers of originating and spreading of fires from the operation of the railroad. To adopt appellant's construction that this section imposed liability on railroad companies which do not keep their right-of-way clear of dangerous combustible materials, regardless of whether such negligence was the proximate cause of the injury, would give rise to a question whether such act violates the equal protection clauses of the State and Federal constitutions. We are of the opinion that the first four counts of the complaint, which do not charge the origin of the fire to the operation of the railroad, do not state a cause of action, and that the Appellate Court was right in so holding.

We come then to the consideration of count five which charges that the fire was set through the negligence of the servants of appellee. The Appellate Court held that the evidence does not show that the fire so originated and that the trial court should have instructed the jury to find for the defendant as to that count. That court found from the evidence that the fire started at, or near, the place where the defendant's employees cleaned and lighted the switch lamp. This court has nothing to do with the weighing of the testimony. That is the function of the Appellate Court and by its findings and conclusions thereon this court is bound. But where the effect of the Appellate Court's holding is that there is not evidence sufficient, when considered alone, to sustain the charge of a count of the complaint or declaration, it becomes the duty of this court to examine the record to determine whether there is any evidence, which, taken with its intendments most favorable to the plaintiff, tends to prove the charge of the declaration. (*Miles* v. *Long,* 342 Ill. 589; *Hunter* v. *Troup,* 315 id. 293; *Leighton and Howard Steel Co.* v. *Snell,* 217 id. 152.) It is undisputed in the evidence that Brannick, the section

foreman, and his helper, Johnson, a few minutes before the fire was discovered, cleaned and refilled with kerosene the switch lamp located about 250 feet south of appellant's warehouse; that the fire started very close to that switchstand and but a few minutes after the switch lamp was relighted. The evidence also shows that the lamp was lighted with an old type pine match, fastened in the curled end of a wire about 7 inches in length. These employees discovered the fire. So far as the record shows there was no one else near the point of origin of the fire at that time and no locomotives or trains were on the switch-track or other tracks, or in the neighborhood. Such was the plaintiff's testimony. In certain important particulars this evidence was denied by Brannick and Johnson. We are of the opinion that giving to such evidence the benefit of all reasonable intendments and inferences, it tended to establish the charges of the fifth count. The Appellate Court therefore erred in holding that the trial court should have allowed defendant's motion to instruct the jury as to it and in reversing the judgment of the lower court without remanding the cause as to that count. *Mirich* v. *Forschner Contracting Co.* 312 Ill. 343.

Other questions are presented through cross-errors, which remain for consideration of the Appellate Court on remandment.

The judgment of the Appellate Court is reversed and the cause is remanded to that court with directions to consider all errors arising on the trial, in so far as they affect the fifth count, and to affirm the judgment, or reverse it and remand the cause.

*Reversed and remanded, with directions.*

Mr. JUSTICE FARTHING, dissenting.