**SCHUTTE & KOERTING CO. v. FISCHER et al.**

**Civil Action No. 1649.**

District Court, E. D. Pennsylvania.

April 26, 1944.

12

E. S. W. Farnum, Yale L. Schekter, and Robert T. McCracken, all of Philadelphia, Pa., for plaintiff.

Leonard L. Kalish, of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

Schutte & Koerting Company brought an action against Fischer & Porter for patent infringement, and Fischer & Porter counterclaimed upon two causes of action, (1) violation of the Anti-Trust Law, 15 U.S.C.A. §§ 1–7, 15 note, and (2) unfair trade competition. The patent suit was first tried, separately, and resulted in a verdict of invalidity.

This trial was upon Fischer & Porter's counterclaim. Inasmuch as they are now the only parties asking relief, it may avoid confusion to refer to them as the plaintiffs and to Schutte & Koerting as the defendants.

The Sherman Act conspiracy was alleged to have been formed by the defendants and Deutsche Rotawerke, a German corporation, and the unfair competition count involved the same combination. This being a civil action for damages, it goes without saying that mere proof of an agreement or conspiracy, without more, would not entitle the plaintiffs to a verdict. In order to support either cause of action, they were bound to show that somebody did something in pursuance of the conspiracy, something which caused them pecuniary damage.

The act relied upon by the plaintiffs as causing the injury for which they sued was the ending of a number of letters to the plaintiffs' customers of August 9, 1938, by Max Chopnick, a New York lawyer, which letters, the plaintiffs contended, contained an implied threat against persons purchasing the plaintiffs' flowmeters and which were otherwise injurious to the plaintiffs' business. Chopnick, it was conceded, was the legal representative of Deutsche Rotawerke in America, and the letters were written in the name and asserted the rights of that corporation only.

In submitting the case to the jury, both in the charge and in instructions contained in written interrogatories, the Court told the jury, in effect, that unless they found that the defendants, through combination or agreement with the German corporation, had something to do with the sending of the letters the verdict would have to be for the defendants. In so doing the Court, I think, correctly adopted the theory upon which the plaintiffs had tried their entire case. The plaintiffs now contend that it was error on the part of the Court so to define the issue, and that there were other tortious acts on the part of Schutte & Koerting on which a verdict could have been grounded.

The only suggestion that can be found in plaintiffs' requests that the plaintiffs relied upon any injurious act chargeable to the defendants, other than the Chopnick letters, is found in the plaintiffs' 48th point in which they asked, in substance, for an instruction that if the jury found that Schutte & Koerting's attempt to enforce its patent against them was made in bad faith, the jury might find a verdict for the plaintiffs. The Court qualified its affirmance of the point by saying that, if the jury found that Schutte & Koerting had acted in bad faith in suing upon the patent, that fact might be considered by the jury as evidence that there was a combination with Deutsche Rotawerke as charged by the plaintiffs. The plaintiffs apparently accepted this qualification as a satisfactory answer to the request, because no exception was taken to the Court's answer. There might have been the barest suggestion of the same thing in the plaintiffs' 50th point. That also was affirmed with similar qualification by the Court and again no exception was taken. It will be noted that neither instruction, as given, precluded the jury from finding a verdict for the plaintiffs upon the conduct complained of on the part of Schutte & Koerting and its salesmen, because if accepted as evidence of concerted action, as the Court told the jury it might be, responsibility for the Chopnick letters would follow.

At the close of the charge the Court, addressing counsel, said: "First of all I want to say this to counsel: Is there any

suggestion as to what I might have said or should have said which I did not say, or as to any misstatement which I might have inadvertently made about the evidence? * * * I am going to ask you now if you have anything that you want to add by way of correction or exception to the charge. I would be glad to have you let me know." In response to this invitation, there was no suggestion by the plaintiffs' counsel that the Court had failed correctly to present to the jury their theory as to the conduct which caused injury to their business and by reason of which they claimed the right to damages.

In spite of the provisions of Rule 51, Federal Rules of Civil Procedure, 28 U. S.C.A. following section 723c, if I thought that I had submitted the main issue to the jury under a prejudicial misapprehension of the plaintiffs' theory of their case, I would not hesitate to grant a new trial; and I do not refer to the plaintiffs' failure to object to my rulings in order to justify my refusal upon any technical ground. The plaintiffs' acquiescence, however, in view of the Court's specific request to be advised of any corrections desired by counsel, goes to show that the plaintiffs unquestionably built their whole case upon the Chopnick letters and that they recognized the Court's instructions as being in accord with the position taken by them throughout the trial. The suggestion now made that there were other acts of the defendants, such as asserting their patent rights and warning the plaintiffs' customers against infringement, upon which, independently of the letters, the plaintiffs based their claim for damages, is obviously a pure after-thought. Whatever was offered or argued with respect to such acts went to their admissibility and probative value as evidence of the connection between the defendants and Deutsche Rotawerke.

The same thing might be said of almost all the plaintiffs' reasons now asserted in this motion for a new trial. However, I prefer not to dismiss them solely on that ground, but because I believe that none of them have any real merit. Certainly none involve error important enough to require a new trial, particularly in view of Rule 61 which enjoins the Court not to disturb a verdict unless refusal to do so "appears to the Court inconsistent with substantial justice."

One complaint is that the Court allowed the jury to pass upon the meaning and scope of the admission contained in the 26th paragraph of Schutte & Koerting's reply to the counterclaim. Of course, where pleadings must be interpreted for the purpose of determining what the issues in the case are and as to what matters evidence need not be presented, the question is entirely for the Court. However, where a pleading containing an admission is offered as evidence, the Court, having determined its admissibility, will properly submit it to the jury as it would any other piece of documentary evidence, and if it is ambiguous (as it was in this case) it will be for the jury to determine its scope and meaning in the light of all the circumstances proved in the trial. The distinction between pleadings as determining the issues and a pleading as evidence is familiar. In the present case, if I had construed the paragraph in question, I should have said that, in view of the last clause, it meant what the defendants said it did. I think there was no error in submitting it to the jury, but if there was, it was in the plaintiffs' favor.

The Court's instruction to the jury with regard to the testimony of the three lawyers called by the plaintiffs for the purpose of showing conspiracy between the defendants and Deutsche Rotawerke was entirely correct. The whole instruction, including what was said after the conclusion of the charge, must be taken together. The lawyers all testified definitely and unequivocally that there was no such combination, agreement or conspiracy, so that if the jury were going to find a verdict for the plaintiffs upon the theory that the lawyers had consummated the conspiracy, they would have had to disbelieve the lawyers' testimony; but the jury were specifically instructed that it was possible to find that such combination had been effectuated otherwise than through the lawyers.

After the jury had been out about five hours they returned for further instructions, at the same time reporting in writing: "We are all of one opinion that there should be no money awarded to Fischer & Porter." The Court properly instructed them that, this being so, they should return a general verdict in favor of the defendants. In view of their agreement upon this point, and even without it, it would have been clear error for the Court to have instructed them, as the plaintiffs requested, that they might find a nominal

verdict in favor of the plaintiffs. The jury evidently had some idea that they might make some division of the costs between the parties. That matter being entirely out of the province of the jury, it would have been improper to allow them to attempt to do it by suggesting a verdict for nominal damages. Moreover, in general, a new trial will not be granted solely to allow a jury to pass upon the question of nominal damages. See L'Hommedieu v. Wilfred Wolfson Co., 187 Minn. 333, 335, 245 N.W. 369; Checkley v. Illinois Cent. R. Co., 257 Ill. 491, 500, 100 N.E. 942, 44 L.R.A.,N.S., 1127, Ann.Cas.1914A, 1202.

The plaintiffs complain that they were not permitted to examine the witness Chopnick as on cross-examination. If the testimony of this witness be examined it will be seen that the plaintiffs' counsel was permitted to treat him almost from the beginning, as though he were a hostile witness. He was, to all intents and purposes, comprehensively cross-examined and in general the plaintiffs were not restricted in asking leading questions nor were they held bound by any of his answers.

I find nothing in any of the numerous other reasons given for the granting of a new trial which calls for comment. I find no error affecting the substantial rights of the plaintiffs at any point in the record.

The motion for a new trial is denied.