### ROTH v. FABRIKANT BROS., Inc.

#### In re FLATO.

#### No. 224, Docket 21284.

United States Court of Appeals Second Circuit.

Argued April 13, 1949.

Decided July 7, 1949.

Before L. HAND, Chief Judge, and SWAN and AUGUSTUS N. HAND, Circuit Judges.

David Haar, New York City, for plaintiff Joseph Roth.

Irving Schneider, New York City (Samuel Friedlander, New York City of counsel), for defendant.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff as trustee in bankruptcy of Paul E. Flato appeals from a judgment of $13,000 in his favor because it is inadequate. The judgment of $13,000 is based on a verdict for $7,700 on the first cause of action of the plaintiff against the defendant termed the "fraudulent transfer" action, and for $5,300 on the. second cause of action termed the "preference" action. The defendant appeals from the judgment on the ground that there was insufficient evidence for the case to be submitted to the jury. We think that the judgment was right and must be affirmed, except for an addition of interest on the verdict of $5,-300.

An involuntary petition in bankruptcy was filed against Flato on May 28, 1943. Thereafter the plaintiff, Joseph Roth, was chosen trustee and brought this action against the defendant. At all the times which we have to consider Flato was insolvent. Flato was a dealer in fine jewelry, normally selling at retail to a trade having very wealthy patrons. The defendant also carried on the business of a dealer in jewelry, buying and selling mostly at wholesale, though at times engaging in retail trade.

Between October, 1942, when Ben Fabrikant, president and principal shareholder of the defendant, first met Flato, and May

1, 1943, when he attended a creditors' meeting in Flato's office, Fabrikant had many transactions with Flato, bought jewelry from him, sold him some, and gave him jewelry on memorandum. When Flato bought jewelry from Fabrikant, he frequently paid by giving notes or checks. Some of these notes were protested for non-payment on presentation and some of the checks were returned for insufficient funds. In addition, Fabrikant made loans of money to Flato, frequently by means of an exchange of checks. At times, Flato's checks were postdated and some of them were returned uncollected. Among the notes and checks that were returned were four notes and four checks, the defaults occurring between March 30 and April 28, 1943. Sometime between the early winter of 1943 and April of that year, there were negotiations between Fabrikant and Flato for a loan by Fabrikant to Flato, or an investment by Fabrikant in Flato's business in the amount of $200,000. These negotiations, however, fell through because Fabrikant required an examination of Flato's books, which Flato avoided.

The action to recover fraudulent transfers made by the bankrupt when he was insolvent is based upon Section 67, sub. d (2) (a) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d (2) (a), which provides: "(2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition in bankruptcy or of an original petition under chapter 10, 11, 12, or 13 of this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; * * *."

Fair consideration is defined in Section 67, sub. d (1) (e) of the Act, 11 U.S.C.A. § 107, sub. d (1) (e), as follows: "consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied * * *."

Jewelry transferred by Flato to Fabrikant at a time when the former was confessedly insolvent and at values which the trustee claims did not represent a fair consideration was as follows:

|  |  | Paid by Fabrikant | Cost as per Books and Flato's Testimony | Claimed Loss |
|---|---|---|---|---|
| Jan. | 27 | $31,500.00 | $ 40,000.00 | $ 8,500.00 |
| Mch. | 3 | 29,500.00 | 61,931.20 | 32,431.20 |
| April | 22 | 5,000.00 | 9,207.96 | 4,207.96 |
| April | 23 | 2,200.00 | 3,336.00 | 1,136.00 |
| April | 24 | 933.75 | 2,526.30 | 1,592.55 |
|  |  | $69,133.75 | $117,001.46 | $47,867.71 |

The transaction of January 27 represented a sale by Flato to Fabrikant of a diamond ring said to have cost Flato $40,000. The latter had tried for some time to sell this ring and could get no offer better than $25,000. Finally, after pawning it for $20,000 in order to raise money, Flato sold it to Fabrikant at a price which yielded $31,500 to Flato and $1,500 to Fabrikant over the $31,500 cost of the ring to him.

The transaction of March 3 involved seven items of jewelry said to have cost Flato $61,931.20 and sold to Fabrikant for $29,500. There was testimony that Fabrikant was unable to dispose of these articles to much advantage and only made a few hundred dollars on resale.

The transaction of April 22 embraced 24 pieces of jewelry which had cost Flato $9,207.96 and which were sold by Flato to Fabrikant for $5,000. The transaction of April 23 involved two pieces of jewelry which were said to have cost Flato $3,336 and were sold by him to Fabrikant for $2,200. The transaction of April 24 involved a pair of ear-clips said to have cost Flato $2,526.30 and sold by him to Fabrikant for $933.75.

The sums paid by Flato for the jewelry embraced in the above transactions were some evidence of value which the jury had to consider in connection with testimony on behalf of Fabrikant that the jewelry was difficult to dispose of and that Flato had paid too much for it. This contention was borne out to some extent by the inability of Fabrikant to sell the items of jewelry at anything like what Flato had paid. Moreover, there was some plausibility in Fabrikant's argument that Flato was induced to pay these high prices because he was in great need of liberal credit terms, and that he was not particularly concerned with the

prices he paid because he had especially well-to-do customers who were likely to pay whatever prices he fixed.

Counsel for the trustee argues that the verdict of $7,700 in the fraudulent transfer action had no relation to the difference between cost to Flato and selling price to Fabrikant on any of the items or groups of items in the five transactions we have referred to. While the jury may have used the cost to Flato as some proof of value of the jewelry, it could take into consideration the other factors we have mentioned which indicated that Flato paid excessive prices, and also could consider the particular testimony that, since he acquired this jewelry or some items of it, it had become evident that it could not be disposed of for any such prices as he had originally paid. The testimony differed as to the considerations which might fix the value of the different items. The whole question was for the jury as the trier of the facts and in view of the disputes in the evidence as to particular items, and the varying considerations affecting value, the verdict must stand. The motion of the plaintiff to set aside the verdict and grant a new trial because of inadequacy of damages was denied. The question involved the exercise of discretion by the District Court, the evidence was conflicting, and the denial of such a motion has not been treated by the courts as subject to review. Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439.

The plaintiff claims that the trial court was in error because it did not define fair consideration in terms of precise language found in Section 67, sub. d (1) (e) of the Bankruptcy Act. We have carefully examined the charge and are entirely satisfied that it explained to the jury the meaning of fair consideration and gave the determining factors in language and illustrations which could not mislead it as to the real meaning of the term. We do not see that anything was to be gained by further amplification of the charge or the granting of the request couched in the precise language of the statute.

Another request that was refused related to diminution of capital, but since the bankrupt at all the times under consideration was admittedly insolvent and the case was submitted to the jury on that theory, the request was evidently irrelevant.

The claim of the defendant that there was no evidence to support any recovery whatever in the fraudulent transfer action is without foundation, for the evidence regarding fair consideration for the transfers in question was disputed. The motion by the defendant for a directed verdict was therefore properly denied.

The claim under the last cause of action is to recover illegal preferences said to have been received by Fabrikant within four months prior to the filing of the petition in bankruptcy. The counsel for the trustee argues that the verdict of the jury for $5,300 was for a preference given by the bankrupt to Fabrikant early in April, 1943. On the basis of this contention, counsel further argues that the jury found that Fabrikant had reasonable cause to believe Flato insolvent at that time, and, if so, that all succeeding payments in April should have been included in the jury's verdict as well as the $5,300.

The testimony that the $5,300 transaction occurred early in April accords with the oral testimony of Flato, but Fabrikant issued a credit memorandum [Defendant's Exhibit D] for $5,300 on August 2, 1943, which bore the notation: "As of April 29, 1943," for which there was testimony indicating that the issuing of the memorandum was delayed by the absence of Fabrikant's bookkeeper through illness. In a list of alleged preferential payments submitted to the jury by consent of counsel for both sides, the item of $5,300 is thus listed: "April 29, 1943 (?) return of merchandise in payment of protested notes and checks $5300.00."

At the trial, neither side suggested that it was not a question for the jury whether the return of the jewelry occurred on April 29 or early in that month. The date of April 29 was borne out by the books of Fabrikant and we cannot discover that the latter had any motive for falsifying the date. Under the circumstances, the records of Fabrikant as to a transaction which occurred more than four years before the

testimony given at the trial would seem to be more reliable than the memory of Flato and clearly would justify a finding of the jury that the $5,300 transaction was on April 29, 1943.

The defaults of Flato in the payment of notes and checks furnished a basis for a finding by the jury that Fabrikant had reasonable cause to believe that Flato was insolvent, Smyth v. Kaufman, 2 Cir., 114 F.2d 40, 130 A.L.R. 951, but every default need not have been regarded as sufficient notice to justify such a belief, particularly in view of evidence that most of the defaults were eventually cured. McDougal v. Central Union Conference Ass'n, 10 Cir., 110 F.2d 939. A jury might give repeated defaults a cumulative effect as proof of notice and at the same time not regard the earlier defaults, when taken alone, as constituting such proof. Moreover, there were defaults on April 26, 27, 28 and 29, which aggregated about $6,150. They acutely presented to Fabrikant proof of Flato's inability to pay his creditors and amply justified the jury in concluding that there was reasonable cause to believe Flato insolvent by April 29, 1943, even though it was not convinced that the prior defaults when taken alone were sufficient.

Counsel for the trustee complains of the failure of the trial judge specifically to charge that the jury might infer reasonable cause to believe that Flato was insolvent from the fact that the latter's notes and checks were not paid in due course. The jury undoubtedly allowed the $5,300 upon the very theory which the trustee's counsel claims was not sufficiently covered by the charge. The question had already been presented in the Judge's charge by quoting the statute and referring to the arguments of plaintiff's and defendant's counsel in support of, and in answer to, plaintiff's claim that the defaults gave the defendant reasonable cause to believe that Flato was insolvent. This, in our opinion, sufficiently presented the question to the jury and necessitated no amplication.

The defendant's contention that there was no substantial proof of intent to obtain a preference has been sufficiently answered in our holding that the question was for the jury.

After verdict, the plaintiff moved that interest on the amounts awarded by the jury be computed from the date of the institution of the action and added to the verdict, though the question whether interest should be allowed had not been submitted to the jury. Likewise, no interest was asked for in the complaint. Failure to demand interest in the complaint, if the proof shows that the plaintiff would otherwise be entitled to interest, should not preclude recovery. See Rule 54(c) of the Federal Rules of Civil Procedure, 28 U.S. C.A.; Gardner v. Mid-Continent Grain Co., 8 Cir., 168 F.2d 819, 824. In our opinion, the recoveries allowed in the verdict for fraudulent transfers should not bear interest, for the amounts of those claims were neither liquidated nor reasonably ascertainable by reference to established market values. Under even the most favorable view, interest could only be allowed by the jury. This is the view of Dean McCormick, expressed in his able Treatise on Damages, at pages 222–25, which is well-fortified by the authorities. None of the authorities cited by the trustee are against the conclusion we reach, and there could hardly be a situation where the value of the property transferred was more uncertain than that of the highly speculative items of jewelry involved in the plaintiff's claims.

The cause of action to recover unlawful preferences stands in a different category. The $5,300 allowed by the jury was completely certain in amount, and the recovery inevitable if the defendant was found to have reasonable cause to believe that Flato was insolvent. It is immaterial that the preference was effected through a transfer of jewelry rather than cash by Flato to Fabrikant, for the latter not only gave a credit of a definite sum in dollars, but neither the amount of the credit nor the value of the jewelry transferred was questioned by either party. Dean McCormick plainly regards interest as recoverable as a matter of law upon facts like these, supra, at pages 217–21. This court allowed interest in a case where the amount due a trustee in bankruptcy for preferential transfers made within four months was ascertainable with reasonable certainty. Levy

v. Weinberg & Holman, Inc., 2 Cir., 20 F. 2d 565. In our opinion, it should make no difference that the appeal there was from the decision of a judge and not from the verdict of the jury, if a definite legal right to recover interest existed in both cases.

For the above reasons, the judgment is modified by adding interest on the sum of $5,300 from May 25, 1945, the date of the institution of the action, to the date of the original judgment, which is otherwise affirmed without costs to either party.