Janet **SCHAEPER**, a Minor, By and Through Her Father, Next Friend and Natural Guardian, Robert Schaeper, Plaintiff-Appellant,

v.

Harold M. **EDWARDS**, Defendant-Appellee.

No. 14646.

United States Court of Appeals Sixth Circuit.

July 10, 1962.

Otto F. Putnick, Cincinnati, Ohio, Goldman, Cole & Putnick and Richard C. Curry, Cincinnati, Ohio, on brief, for appellant.

John A. Kiely, Cincinnati, Ohio, Rendigs, Fry & Kiely, Cincinnati, Ohio, on brief, for appellee.

Before MILLER, Chief Judge, SIMONS, Senior Circuit Judge, and THORNTON, District Judge.

SHACKELFORD MILLER, Jr., Chief Judge.

Janet Schaeper, a minor, hereinafter referred to as the plaintiff, brought this action in the District Court against the defendant, Harold M. Edwards, to recover damages for personal injuries received in an automobile accident on July 12, 1958, alleged to have been caused by defendant's negligent operation of his motor vehicle at said time. Plaintiff was a passenger in the car in which she was riding.

Although the defendant by his answer denied liability, he did not persist in this defense and at the trial admitted liability for the accident. The case was tried to a jury on the question of damages. The jury returned a verdict for the defendant. Plaintiff moved for a new trial on the grounds that the verdict was contrary to the law and the evidence and manifestly against the weight of the evidence. The District Judge overruled the motion for a new trial and this appeal followed.

The record on which we are asked to consider this appeal is unsatisfactory in that we do not have a complete transcript of the trial proceedings. In lieu thereof, there has been filed "Excerpts of Proceedings" which contains the plaintiff's opening statement and closing argument, the defendant's opening statement and closing argument, and the testimony of only one witness, Dr. Donald N. Berning, an orthopedic physician, who testified about X-ray pictures taken at his instructions, with particular reference to an injury to plaintiff's right ankle. We gather from the opening and closing arguments that other medical witnesses also testified and that the plaintiff herself testified, but the testimony of such witnesses was not included in the excerpt and is not before us on this review. Nor do we have the instructions of the trial judge. See Rule 16(2) (e), Rules of this Court, 28 U.S.C.A.

We gather, not from the "Excerpts of Proceedings," referred to above, but from the arguments and briefs of counsel that plaintiff was a passenger in a car driven by her mother and was seated in the rear seat of the automobile; that the car of the defendant, in attempting to pass another vehicle, came over left of the center line of the road and collided head-on with the car in which the plaintiff was riding; that after the accident the plaintiff and a young boy, who was also on the back seat, were down on the floor and that the plaintiff's legs were cut and bruised; that there was also evidence that plaintiff was dazed and received a bruise or bump on her head in the hairline or immediately beneath the hairline. On the other hand, we also gather from the arguments of counsel that there was evidence showing that following the accident the plaintiff responded to the inquiry, "Are you all right?" by saying, "Oh, I am all right," that she left the scene of the accident and shortly thereafter returned with her boy friend and her father, without physical assistance, to get her belongings and was apparently suffering only from the bruises and scratches on her legs. It also appears that there was a great deal of expert medical testimony relating to an epileptic condition of the plaintiff and its reactivation and aggravation by reason of the accident and the forceful blow to her head. This condition was first noticed when the plaintiff was four years old, that dizzy spells occurred from the age of 4 to the age of approximately 13; that there were occasional spells when momentarily the plaintiff appeared to lose contact with the situation and people around her. The plaintiff contended that from the age of 13 to September 1958 she did not have these dizzy spells but that in September of that year, following the accident on July 12, 1958, she began to have a different sort of spell and had suffered recurrent grand mal seizures, which is a condition where a person has violent muscle contractions, loses consciousness, needs to be restrained and cared for. Defendant contended, and apparently introduced medical testimony in support thereof, that if the plaintiff had this condition it was a progressive stage of her earlier condition and was not the

result of any blows or injuries which she received from the accident.

It is plain from the record before us that the plaintiff prosecuted this action for the purpose of obtaining a substantial recovery from the grand mal seizures suffered by the plaintiff after the accident and continuing through the remainder of her life. The complaint alleges injuries suffered by the plaintiff to her head and back without more definite statement thereof and also alleges aggravation of pre-existing physical and mental conditions accompanied by great pain of body and mind, and sought judgment in the amount of $81,000.00. Plaintiff's counsel in his opening statement to the jury stated: "In this collision we expect to show that Miss Schaeper received certain injuries. The immediate injuries she received were bruises, a hickey on the head and some small cuts. This, * * *, is a case where the end result, we believe, will be shown conclusively to be that this young girl now has what is termed in the medical profession as grand mal epilepsy." That was the only reference to the bruises and cuts. The rest of the statement discussed in some detail the nature and seriousness of grand mal epilepsy. In his closing argument to the jury plaintiff's counsel dwelt heavily on the physical and mental suffering resulting from grand mal epilepsy, with only passing reference to the bruises, cuts and an injury to plaintiff's ankle.

The jury by its verdict necessarily found that the grand mal epilepsy suffered by the plaintiff was not caused by the accident. On this review plaintiff does not challenge this finding. It is now urged upon us by her that, although the jury found against her on that issue, the evidence was uncontradicted that she also suffered certain physical injuries such as cuts and bruises to her legs, a bump on the head, and an injury to her right ankle, and that the jury wilfully disregarded the instructions of the trial judge in not awarding damages for these injuries. As hereinabove stated, we do not have the instructions of the trial judge. It is contended that since liability was admitted and the evidence was uncontradicted that certain physical injuries were suffered, the jury was required to return a verdict for the plaintiff, even though it found against the plaintiff on the issue of grand mal epilepsy.

It is the well settled general rule that an appellate court will not review the action of a federal trial court in granting or denying a motion for a new trial for error of fact in that it is a matter within the discretion of the trial court. The rule is applicable where the ground of the motion is that the damages awarded by the jury were excessive or inadequate. Fairmount Glass Works v. Coal Co., 287 U.S. 474, 481, 53 S.Ct. 252, 77 L.Ed. 439. But, as pointed out in that case and in cases heretofore considered by this Court, the appellate court, under certain circumstances, may inquire into the action of the trial court on a motion for a new trial. Pugh v. Bluff City Excursion Co., 177 F. 399, C.A.6th; Reisberg v. Walters, 111 F.2d 595, C.A.6th; Devine v. Patteson, 242 F.2d 828, 832, C.A.6th. In each of these cases this Court reversed the ruling of the District Judge in denying the plaintiff's motion for a new trial based on the inadequacy of the award of damages. In the Pugh case we said that the ruling of the trial judge should be reversed where the verdict is inconsistent on its face and shows the abuse of power on the part of the jury. This exception to the general rule was applied in the Reisberg and Devine cases where the juries found for the plaintiffs but awarded damages in amount substantially less than was unquestionably proven by plaintiff's uncontradicted and undisputed evidence. However, as this Court held in Spero-Nelson v. Brown, 175 F.2d 86, 89–90, C.A.6th, the exception is not applicable when the factual question of the amount of damages is in dispute, even though liability may be undisputed. Rankin v. Shayne Brothers, Inc., 98 U.S.App. D.C., 234 F.2d 35; Uhl v. Echols Transfer Co., 238 F.2d 760, 761, C.A.5th; Knight v. Loveman, Joseph & Loeb, Inc.,

217 F.2d 717, C.A.5th; Roth v. Fabrikant Bros., 175 F.2d 665, 668, C.A.2d.

In the present case the amount of damage to the plaintiff with respect to cuts, bruises and injury to the ankle was unliquidated and in dispute. The record does not show the nature, extent or seriousness of the cuts and bruises. We gather from a hypothetical question asked of a medical witness that the plaintiff received no medical attention or treatment on account of them. The record does not show any. They did not incapacitate the plaintiff in any way. With respect to the ankle injury, we have in the record the testimony of an orthopedic physician who examined the plaintiff first in January of 1959, approximately six months after the accident, and again in May of 1959. His X-rays showed a small bone chip on the outside of the right ankle which he called "a small evulsion fracture." On cross-examination he stated that it did not affect her normal walking, she did not limp, the ankle had no fluid in it, and the injury consisted essentially in the fact that the reserve strength in the ankle was probably less than it was before the accident.

In the arguments to the jury both counsel treated the cuts, bruises and ankle injury as of a very minor nature, except for the possible connection with the aggravation of the epileptic condition. In his opening statement to the jury, plaintiff's counsel told the jury that the question of liability was admitted and that the *sole* issue for the jury to decide was "whether or not this accident caused or aggravated the pre-existing condition, brought it to light" and to place a dollar value upon it. In his closing argument to the jury he talked almost exclusively about the pain and mental suffering on the part of one afflicted with grand mal epilepsy. He wrote on a blackboard a list of things for the jury to consider in determining the damages to be awarded for this disease. He listed "fear," "pain," "personality change," "loss of privacy," "restriction of activities," and "loss of job opportunity," explaining the

effect of grand mal epilepsy with respect to each item. He made only passing references to the bruises and cuts and the injury to the ankle, saying at one point, "She had some bruises, some cuts and she was dazed at the time of the accident and apparently, after coming out of that daze, went on." This statement was made in answer to defendant's evidence that the plaintiff had stated in answer to a question about her injuries after the accident that she was all right. At another point he stated, obviously in answer to defendant's contention that plaintiff would have to have had a head injury or bruise to cause the grand mal epilepsy condition, "We say she had the bruise. She was shook up violently in this car." His reference to the injury to the ankle was made in support of the contention that plaintiff had received a brain injury. He said, "It was a head-on collision. She received one thing which shows a large amount of force, an evulsion fracture of her ankle. Dr. Mayfield said certainly that shows force to the ankle."

Defendant's counsel in his closing argument admitted that there were bruises and a cut on the legs and stated to the jury, "That is a matter of small moment." The remainder of his argument was devoted almost entirely to the issue of grand mal epilepsy. Counsel for plaintiff in his final argument to the jury permitted this statement about plaintiff's other injuries to go unchallenged. He stated that the bruise wasn't important, but that bruises can cause complications for which the defendant would be responsible. In his closing remarks he referred to the dread disease which had been inflicted upon the plaintiff for which there was no known cure. He referred to the different kinds of damage he had listed on the blackboard and said: "Those are the damages. I submit to you they are not speculative damages. And the amount that you determine in accordance with the instructions, is the amount of damage to which this child is entitled for the rest of her life for this particular suffering of the spector of this disease. * * * And I don't think that when it

comes to speculation that any amount of money you would award would compensate for what she has to live through day in, day out, for the rest of her life, with only the hope, according to the testimony of the doctors—with only the hope that by constant drug medication perhaps in the reasonable future they will be able to control what she now has."

Since liability was admitted by the defendant, the plaintiff was entitled to an award of damages for her cuts, bruises and ankle injury, even though nominal in amount. But in view of the evidence, or lack of evidence, with respect to these injuries, and the obvious disregard of them in counsel's argument to the jury, we are of the opinion that a verdict in only a nominal amount should have been returned by the jury. Apparently, the jury by its verdict was of the opinion that such injuries were of too minor a nature to be compensable in any material amount. If it had returned a verdict for the plaintiff in a nominal amount, the refusal of the District Court to grant a new trial would not be set aside on this review. Fairmount Glass Works v. Coal Co., supra, 287 U.S. 474, 485, 53 S.Ct. 252, 77 L.Ed. 439; Spero-Nelson v. Brown, supra, 175 F.2d 86, 89–90, C.A.6th; Roth v. Fabrikant Bros., supra, 175 F.2d 665, 668, C.A.2d.

It accordingly appears that the overall picture of this case is that the real factual issue involved has been heard and considered by a jury and has been resolved against the plaintiff, but that the jury committed error on a minor issue by returning a verdict for the defendant, when technically the plaintiff was entitled to a verdict for nominal damages. Under such circumstances, we believe the rule is well established that an appellate court will not reverse an order of the trial judge overruling plaintiff's motion for a new trial because of error in the trial court in not awarding plaintiff nominal damages. Kelly v. Fahrney, 97 F. 176, 179, C.A.8th; United States v. Withers, 130 F. 696, 698, C.A.2d; Thomas China Co. v. C. W. Raymond Co., 135 F. 25, 30, C.A.6th; Schutte & Koert-

ing Co. v. Fischer, 4 F.R.D. 11, 14 E.D. Pa.; Vachon v. Todorovich, 356 Mich. 182, 188, 97 N.W.2d 122, 72 A.L.R.2d 1299, 1303; Checkley v. Illinois Central R. Co., 257 Ill. 491, 500, 100 N.E. 942, 44 L.R.A.,N.S., 1127; L'Hommedieu v. Wilfred Wolfson Co., 187 Minn. 333, 335, 245 N.W. 369; Pioneer Min. Co. v. Bannack Gold Min. Co., 60 Mont. 254, 198 P. 748; Bangor O. & M. R. Co. v. Smith, 49 Me. 9. See: Wright v. Farm Journal, 158 F.2d 976, 978, C.A.2d.

The rule is particularly applicable in the present case in that if a new trial be granted it would enable the plaintiff to retry before another jury the real issue in this case, which has already been considered by a jury and decided against her.

The judgment is affirmed.