**Ulf G. HAMMARSKJOLD**

v.

**FOUNTAIN POWERBOATS**

and

**Vincent Pizio.**

Civ. A. No. 90–6566.

United States District Court,
E.D. Pennsylvania.

Jan. 21, 1992.

John G. Shea, Michael S. Dinney, Shea and Shea, Bryn Mawr, Pa., for plaintiffs.

Jonathan Dryer, Louis J. Isaacsohn, Wilson, Elser, Moskowitz, Edelman & Dicker, Philadelphia, Pa., Kenneth R. Wooten, Ward & Smith, P.A., New Bern, N.C., John R. Sparks, Jr., Lancaster, Pa., for defendants.

## MEMORANDUM

McGLYNN, District Judge.

Plaintiff brought this action against the manufacturer and the operator of a high performance power boat for injuries sustained by him while a passenger on the boat. The claim against the manufacturer was tried on a theory of products liability and against the operator on a theory of negligence. The jury found that there was no defect in the boat, thus exonerating the manufacturer, but found that the operator was causally negligent and awarded damages in the amount of $95,000.

Before the Court is plaintiff's motion for a new trial against the operator only on the grounds that the damage award was inadequate.

On September 10, 1989 the plaintiff, who was seated on a bench seat in the cockpit of the boat, sustained a typical vertebra compression or burst fracture at L1 when the boat, which was traveling at a speed somewhere between forty-five and .sixty miles per hour hit a wave, went into the air and came down with great force. A passenger seated beside plaintiff also suffered a compression fracture of L1.

Plaintiff was in severe pain and after the boat docked, he was taken by ambulance to the Atlantic City Medical Center where he received some medication and, thereafter, he was transferred by ambulance and helicopter to the Thomas Jefferson University Hospital where he underwent a spinal fusion. The procedure included the insertion of screws in his skull and pins through his leg bones in order to attach traction equipment, the insertion of two Moe rods alongside the vertebrae which, through the use of a "rachet", spreads the space around the damaged vertebra, and finally a bone graft from the pelvis to fuse three vertebrae above and two below the damaged vertebra.

This procedure reduced the intrusion of the compressed vertebra into the spinal canal from 40% to 15%. The fusion of the six vertebrae, of course, resulted in a permanent limitation of the flexion, extension and rotation of the back. The Moe rods remain in the body for added stability. Plaintiff was discharged from the hospital on September 20, 1989 with instructions to use a brace which extended from his upper chest to his pelvis. As of October 23, 1989 he was wearing the brace 23 hours a day but nevertheless, he was riding a stationary bicycle 40 miles a day. He complained of difficulty sleeping because of restlessness and some soreness or numbness in his thigh. By December 4, 1989 he had discontinued some of his bike riding, substituted swimming and by May 1990 he was swimming thirty laps per day.

He returned to work, at least part time, at the end of October 1989. In the beginning of December 1989, less than three months after the accident, plaintiff traveled to London, to Singapore, to Perth, to Sydney and returned to Philadelphia via Hawaii. He returned to work full time after this trip.

Plaintiff's doctor testified that he has progressed as far as can be expected. His muscle tone is good and his gait and heel-toe walking is normal. He is able to carry out his daily routine of exercise as well as the demands of his work without difficulty.

Plaintiff was born in 1934 and at the time of trial had a controlling interest in the business enterprise which employed him as an executive. At the time of trial, he had a life expectancy of 20.4 years.

Plaintiff's medical expenses totalled $67,-872.88 and defendant does not dispute that they were fair, reasonable and necessary. On the other side of the ledger, plaintiff concedes that the evidence relating to loss of earnings and loss of earning power was less than compelling. Thus, the issue boils down to whether $27,127.12—the difference between $67,872.88 in medical expenses and the verdict of $95,000—is adequate compensation for all of those non-economic injuries usually included under the heading "Pain and Suffering."

In *Semper v. Santos*, 845 F.2d 1233, 1236 (3rd Cir.1988), the court stated the rule that "the remedy of a new trial for insufficient damages is only appropriate when the evidence indicates that the jury awarded damages in an amount 'substantially less than was unquestionably proven by plaintiff's uncontradicted and undisputed evidence'." *Taylor v. Bennett*, 323 F.2d 607, 609 (7th Cir.1963) (quoting *Schaeper v. Edwards*, 306 F.2d 175, 177 (6th Cir.1962) "or if the award is so unreasonable as to shock the conscience of the court." The court, citing *Porterfield v. Burlington Northern, Inc.*, 534 F.2d 142 (9th Cir.1976), also stated that a low damage award should not be overturned where it results from credibility judgments by the trier of fact. "The jury was under no obligation to believe the testimony of Semper as to his chest pain even if that testimony were undisputed." 845 F.2d at 1237.

Here, defendant conceded the seriousness of the injury and the validity of the medical bills, but at the same time, defendant vigorously contested whether such injury had any significant impact on plaintiff's lifestyle or the quality of his life. Defendant points out that plaintiff resumed his fitness regime almost within days of his release from the hospital, that he resumed air travel within three months, and that he was working full time within five months. In addition, defendant al-

ludes to some serious credibility problems, particularly the jury's obvious rejection of plaintiff's claim for loss of earnings and earning power. The jury's lack of confidence in that evidence no doubt spilled over into their evaluation of the non-economic damages. The record also supports defendant's contention that plaintiff's complaints about continuing aches and pains were exaggerated.

Nevertheless, it cannot be disputed that a compression fracture of a spinal vertebra is a serious injury nor can it be disputed that a spinal fusion results in a permanent disability. To this must be added what our common experience teaches us and that is that the operative procedures and treatment employed here involved risk, anxiety, discomfort, inconvenience and pain. Moreover, there are obvious concerns about the future such as the stress placed on the non-fused vertebra and the degenerative changes triggered by the trauma.

In light of these circumstances, I am convinced that the damage award was unreasonable. The sum of $27,127 is simply not adequate to compensate the plaintiff for his pain and suffering. As the court noted in *Hill v. Commonwealth, Bureau of Corrections*, 124 Pa.Commw. 172, 555 A.2d 1362, 1368 (1989) "[A]n award for pain and suffering with respect to obvious serious injuries need not be zero or normal or a trivialization of the plaintiff's injuries in order to be inadequate." Plaintiff's motion for a new trial will be granted.

■ Finally, because there was conflicting evidence as to liability, I am persuaded that the low verdict was a compromise; that is, that the jury brought in a verdict for the plaintiff but in an amount less than what it would have brought in if liability had been free from doubt. Accordingly, the new trial will include liability as well as damages.